# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| M. SHANE HAMILTON, derivatively on behalf of SAEXPLORATION HOLDINGS, INC., | |
| Plaintiff, | C.A. No. _____ |
| v. | |
| JEFF HASTINGS, BRIAN A. BEATTY, BRENT WHITELEY, L. MELVIN COOPER, GARY DALTON, MICHAEL FAUST, MICHAEL KASS, ALAN B. MENKES, and JACOB MERCER | **DEMAND FOR JURY TRIAL** |
| Defendants, | |
| and | |
| SAEXPLORATION HOLDINGS, INC., | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

Plaintiff M. Shane Hamilton ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively and on behalf of Nominal Defendant SAExploration Holdings, Inc. ("SAExploration" or the "Company") files this Verified Shareholder Derivative Complaint against Individual Defendants Jeff Hastings, Brian A. Beatty, Brent Whiteley, L. Melvin Cooper, Gary Dalton, Michael Faust, Michael Kass, Alan B. Menkes, and Jacob Mercer (collectively, the "Individual Defendants," and together with SAExploration, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of SAExploration, unjust enrichment, waste of corporate assets, and violations of Sections 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges

the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls, and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding SAExploration, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action that seeks to remedy wrongdoing committed by SAExploration's directors and officers from at least March 15, 2016 through the present (the "Relevant Period").

2.     SAExploration is a Delaware corporation with its principle executive offices located in Houston, Texas. SAExploration provides seismic data acquisition, logistical support, processing, and integrated reservoir geosciences services to customers in the oil and gas industry. The Company conducts its business through wholly owned subsidiaries and offices in North America, South America, Asia Pacific, and West Africa.

3.     During the Relevant Period, the Company had a controlling financial interest in Alaska Seismic Ventures, LLC, ("ASV"). ASV was therefore a variable interest entity ("VIE"), a type of business entity in which an investor has a controlling financial interest but does not possess a majority of voting rights. Public companies are required by federal securities rules to disclose VIEs in their annual reports filed on Form 10-Ks with the SEC.

4.    Each of the Company's annual reports filed with the SEC on Form 10-K during the fiscal years ended December 31, 2015, December 31, 2016, December 31, 2017, and December 31, 2018 (respectively, the "2015 10-K," the "2016 10-K," the "2017 10-K," and the "2018 10-K"), as well as each of the Company's quarterly reports filed with the SEC on Form 10-Q from the fiscal quarter ended March 31, 2016 through the fiscal quarter ended May 14, 2019 contained signed certifications by certain of the Individual Defendants attesting to the accuracy of those statements, the disclosure of any material changes to the Company's internal controls over its financial reporting, and the disclosure of any fraud committed by the Company or its officers and directors.

5.    Additionally, the 2015 10-K, the 2016 10-K, the 2017 10-K, and the 2018 10-K each stated that the Company continually evaluated whether it had a controlling financial interest in any VIE, which the Company would be required to consolidate as a result.

6.    On August 15, 2019, the Company issued a press release revealing that the SEC was investigating the Company over accounting issues that arose between 2015 and 2016. As a result of the investigation, the Company stated that it would need to restate its financial statements filed with the SEC between 2015 and 2018, and the Company would need to delay filing its quarterly report for the quarter ended June 30, 2019. That same day, Defendant Whiteley was terminated from his positions with the Company, and Defendant Hastings resigned as Chairman of the Board and was placed on administrative leave.

7.    Upon the release of this news, SAExploration's share price dropped $1.13 per share, more than 34% from its closing price of $3.25 on August 15, 2019, to close at $2.14 on August 16, 2019.

8.      During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements regarding the Company's finances and compliance. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the investing public that failed to disclose, *inter alia*, that: (1) the Company had a controlling financial interest in ASV, which meant that the Company was required to consolidate ASV in its financial statements filed with the SEC; (2) the Company erroneously failed to classify ASV as a VIE, and did not consolidate ASV in its financial statements; (3) the Company had failed to maintain adequate internal controls over its financial reporting; (4) the above facts were likely to result in an SEC investigation of the Company; and (5) consequently, the Company would have to postpone filing its quarterly report with the SEC for the quarter ended June 30, 2019. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

9.      During the Relevant Period, the Individual Defendants also breached their fiduciary duties by failing to correct and causing the Company to fail to correct these false and misleading statements and omissions of material fact to the investing public while at least three of the Individual Defendants engaged in insider sales, netting proceeds of over $579,327.

10.     Additionally, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain internal controls.

11.     As a result of the Individual Defendants' misconduct, which has subjected SAExploration, its Chief Operating Officer ("COO"), its former Chief Financial Officer ("CFO"), and its former President and Chief Executive Officer ("CEO") to being named as defendants in a federal securities fraud class action lawsuit filed in the United States District

Court for the Southern District of Texas (the "Securities Class Action"), the need to undertake internal investigations, the need to implement adequate internal controls over its financial reporting, the losses from the waste of corporate assets, the losses due to the unjust enrichment of the Individual Defendants who were improperly over-compensated by the Company and/or who benefitted from the wrongdoing alleged herein, the Company has and will have to expend many millions of dollars.

12.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in the misconduct, the substantial likelihood of the directors' liability in this derivative action, the COO's, former CFO's, and former CEO's liability in the Securities Class Action, and their not being disinterested and/or independent directors, a majority of SAExploration's Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n, Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9.

14.     Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

15.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

17.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because SAExploration is incorporated in this District. In addition, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff

18.     Plaintiff is a current shareholder of SAExploration common stock. Plaintiff has continuously held SAExploration common stock at all relevant times.

### Nominal Defendant SAExploration

19.     SAExploration is a Delaware corporation with its principal executive offices at 1160 Dairy Ashford Road, Suite 160, Houston, Texas 77079. SAExploration's shares trade on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "SAEX."

### Defendant Hastings

20.     Defendant Jeff Hastings ("Hastings") served as the Company's CEO from 2016 to August 15, 2019, and as the Chairman of the Board from 2011 to August 15, 2019.  On August 15, 2019, Defendant Hastings was placed on administrative leave, and resigned his position as an officer and director of the Company, including his position as Chairman of the Board. According to the Company's Schedule 14A filed with the SEC on April 30, 2019 (the "2019 Proxy Statement"), as of April 26, 2019, Defendant Hastings beneficially owned 118,939 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 26, 2019 was $3.65, Defendant Hastings owned approximately $434,127 worth of SAExploration stock.

21.     For the fiscal year ended December 31, 2018, Defendant Hastings received $4,655,310 in compensation from the Company. This included $559,703 in salary, $3,902,752 in

stock awards, $125,757 in Non-Equity Incentive Plan Compensation, and $67,098 in all other compensation.

22.     During the period of time when the Company materially misstated information to the investing public to keep the stock price inflated, and before the scheme was exposed, Defendant Hastings made the following sale of Company stock:

| Date | Number of Shares | Price | Proceeds |
|---|---|---|---|
| December 22, 2016 | 33,812 | $8.04 | $271,848 |

His insider sale made with knowledge of material non-public information before the material misstatements and omissions were exposed demonstrates his motive in facilitating and participating in the scheme.

23.     The Company's 2019 Proxy Statement stated the following about Defendant Hastings:

> Mr. Hastings is Chairman of the Board and Chief Executive Officer of the Company. Mr. Hastings served as Executive Chairman of the Board and a member of the Board from 2013 to his election as Chairman and Chief Executive Officer in 2016. From 2008 to 2013, he was the majority stockholder of the Company's predecessor ("Former SAE") and in 2011, he became the Executive Chairman of Former SAE. Previously, Mr. Hastings was the President and an owner of Fairweather Geophysical, which primarily performed seismic operations in Alaska, and which was acquired by Veritas DGC Inc. in 2000. From 2000 until becoming the majority stockholder of Former SAE in 2008, Mr. Hastings was with Veritas in multiple positions, including Operations Manager for Alaska.

> Mr. Hastings brings extensive business, managerial and leadership experience to the Board. With over 35 years of experience in the geophysical industry, Mr. Hastings provides the Board with a vital understanding and appreciation of the Company's business. The Company believes that Mr. Hastings is qualified to serve on the Board based on his extensive knowledge of SAE and his experience in the geophysical industry.

**Defendant Whiteley**

24.     Defendant Brent Whiteley ("Whiteley") served as SAExploration's CFO, General Counsel, and Secretary from 2010 until August 15, 2019, when he was terminated from his

positions at SAExploration. According to the 2019 Proxy Statement, as of April 26, 2019, Defendant Whiteley beneficially owned 96,991 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 26, 2019 was $3.65, Defendant Whiteley owned approximately $354,017 worth of SAExploration stock.

25.     For the fiscal year ended December 31, 2018, Defendant Whiteley received $3,636,395 in compensation from the Company. This included $403,410 in salary, $3,099,219 in stock awards, $78,668 in Non-Equity Incentive Plan Compensation, and $55,098 in all other compensation.

26.     The Company's website stated the following about Defendant Whiteley:[1]

Joining SAE in March 2010, Mr. Whiteley brought over 20 years of legal and senior management experience to the company. Prior to joining SAE, he was General Counsel for CGGVeritas and after obtaining his MBA from Rice University, led CGGVeritas' Land Acquisition business in the Americas. As CFO and General Counsel, Mr. Whiteley brings to SAE the sophisticated financial, legal and management experience required to lead its next phase of growth. As part of the executive management team, Mr. Whiteley will guide the Company through its continued expansion.

**Defendant Beatty**

27.     Defendant Brian Beatty ("Beatty") founded SAExploration in 2006 and served as the Company's CEO from June 2013 until August 2016. Defendant Beatty has served as a Company director since 2011, and as the Company's COO since 2016. According to the 2019 Proxy Statement, as of April 26, 2019, Defendant Beatty beneficially owned 86,028 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 26, 2019 was $3.65, Defendant Beatty owned approximately $314,002 worth of SAExploration stock.

---

[1] http://investors.saexploration.com/management/brent-whiteley. Last visited August 29, 2019.

28.     For the fiscal year ended December 31, 2018, Defendant Beatty received $4,624,971 in compensation from the Company. This included $559,703 in salary, $3,902,752 in stock awards, $125,757 in Non-Equity Incentive Plan Compensation, and $36,759 in all other compensation.

29.     During the period of time when the Company materially misstated information to the investing public to keep the stock price inflated, and before the scheme was exposed, Defendant Beatty made the following sales of Company stock:

| Date | Number of Shares | Price | Proceeds |
|---|---|---|---|
| June 13, 2019 | 44,311 | $3.05 | $135,148 |
| December 21, 2018 | 3,050 | $2.08 | $6,344 |
| December 30, 2016 | 8,865 | $7.27 | $64,448 |
| June 28, 2016 | 527,000 | $0.18 | $94,860 |

Thus, in total, before the fraud was exposed, he sold 583,226 Company shares on inside information, for which he received approximately $303,400. His insider sales made with knowledge of material non-public information before the material misstatements and omissions were exposed demonstrate his motive in facilitating and participating in the scheme.

30.     The Company's 2019 Proxy Statement stated the following about Defendant Beatty:

Mr. Beatty is the Chief Operating Officer of the Company and a member of the Board. Mr. Beatty served as President and Chief Executive Officer and a member of the Board from 2011 to his election as Chief Operating Officer and a member of the Board in 2016. He founded Former SAE in 2006 and served as the President and Chief Executive Officer of Former SAE from its inception. Prior to founding Former SAE, Mr. Beatty held many positions with Veritas DGC Inc., beginning as a seismic field manager and eventually managing all of Veritas' South American operations and establishing Veritas' business in Peru, Chile, Argentina, Brazil, and Bolivia.

Mr. Beatty has over 30 years of experience in the geophysical industry working in numerous different geographies. The Company believes that Mr. Beatty is qualified to serve on the Board based on his extensive knowledge of the Company and his experience in the geophysical industry.

**Defendant Cooper**

31.     Defendant L. Melvin Cooper ("Cooper") has served as a Company director since 2016. He also serves as the Chair of the Audit Committee and as a member of the Compensation Committee. According to the 2019 Proxy Statement, as of April 26, 2019, Defendant Cooper beneficially owned 375 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 26, 2019 was $3.65, Defendant Cooper owned approximately $1,368 worth of SAExploration stock.

32.     For the fiscal year ended December 21, 2018, Defendant Cooper received $195,000 in compensation from the Company. This included $95,000 in fees earned or cash paid and $100,000 in stock awards.

33.     The Company's 2019 Proxy Statement stated the following about Defendant Cooper:

> Mr. Cooper has served as the Senior Vice President and Chief Financial Officer of Forbes Energy Services Ltd. (OTC: FLSS) ("Forbes"), a public company in the energy services industry, since 2007. Forbes filed for financial reorganization under Chapter 11 of the U.S. Bankruptcy Code in January 2017 and successfully emerged in April 2017. Prior to Forbes, Mr. Cooper served in financial or operating roles of various companies involved in oilfield site preparation, new home construction, supply chain management, and other industries. Since 2010, Mr. Cooper has served on the Board of Directors of Flotek Industries, Inc. (NYSE: FTK), where he is a member of the Nominating and Corporate Governance, Audit, and Compensation Committees. Since 2012, Mr. Cooper has served on the Board of Directors of Par Pacific Holdings, Inc. (NYSE: PARR), where he is a member of the Audit, Nominating and Corporate Governance Committees. Mr. Cooper received a Board Leadership Fellow certification from the National Association of Corporate Directors ("NACD") where he is also a member of the Board of Directors of the NACD Houston/Austin/San Antonio Chapter. Mr. Cooper earned a degree in accounting from Texas A&M University–Kingsville in 1975 and is a Certified Public Accountant.

**Defendant Dalton**

34.     Defendant Gary Dalton ("Dalton") has served as a Company director since 2013. He also serves as the Chair of the Compensation Committee, and as a member of the Nominating Committee and the Audit Committee.

35.     For the fiscal year ended December 31, 2018, Defendant Dalton received $180,000 in compensation from the Company. This included $80,000 in fees earned or cash paid and $100,000 in stock awards.

36.     During the period of time when the Company materially misstated information to the investing public to keep the stock price inflated, and before the scheme was exposed, Defendant Dalton made the following sale of Company stock:

| Date | Number of Shares | Price | Proceeds |
|------|------------------|-------|----------|
| September 27, 2018 | 390 | $10.46 | $4,079 |

His insider sale made with knowledge of material non-public information before the material misstatements and omissions were exposed demonstrates his motive in facilitating and participating in the scheme.

37.     The Company's 2019 Proxy Statement stated the following about Defendant Dalton:

> Mr. Dalton has served as the President of Latash Investments LLC, an investment advisory firm based in Alaska, since 2001. He previously served as Chief Financial Officer and Executive Vice President at National Bank of Alaska for more than 20 years. Prior to joining National Bank of Alaska, he worked for the Comptroller of the Currency as a Bank Examiner. Mr. Dalton is a Trustee of the Alaska Permanent Fund Corporation and a Board member of the Alaska Museum Foundation. He graduated from the University of Puget Sound.

> The Company believes that Mr. Dalton is qualified to serve the Board based on his investment and financial expertise.

**Defendant Faust**

38.     Defendant Michael Faust ("Faust") has served as a Company director since 2017, as Chairman of the Board since August 15, 2019, and as interim President since August 19, 2019. He also serves as a member of the Audit Committee.

39.     For the fiscal year ended December 31, 2018, Defendant Faust received $191,000 in compensation from the Company. This included $91,000 in fees earned or cash paid and $100,000 in stock awards. Defendant Faust will also receive a $1 million signing bonus in connection with his appointment as interim President.

40.     The Company's 2019 Proxy Statement stated the following about Defendant Faust:

> Mr. Faust has over 35 years of industry, financial and leadership experience within the oil and natural gas sector, including diverse geological, geophysical and reservoir experience spanning many different basins and formations throughout the world. Since March 2019, Mr. Faust has served as the President and Chief Executive Officer of Obsidian Energy Ltd. (TSX: OBE) ("Obsidian"), a Canadian-listed public company in the oil and natural gas industry, and has also served on its Board of Directors and its Operations and Reserves Committees since April 2018. Since March 2019, Mr. Faust has served on the Board of Directors of Parker Drilling Company (NYSE: PKD), a U.S.–listed provider of drilling services and rental tools to the energy industry in the U.S. and international markets, where he serves on the Audit and Corporate Governance Committees. Previously, Mr. Faust had a long career of increasing responsibilities with ExxonMobil, ConocoPhillips Alaska, Inc. and ConocoPhillips Canada Ltd., where he oversaw and managed the companies' exploration and strategy in those regions. Mr. Faust earned his Master of Arts degree in Geophysics from the University of Texas at Austin in 1984, after receiving his Bachelor of Science degree in Geology from the University of Washington in 1981. Mr. Faust is a Certified Petroleum Geologist and is a member of the American Association of Petroleum Geologists (AAPG) and the Society of Exploration Geophysicists (SEG).

> The Company believes that Mr. Faust is qualified to serve on the Board based on his oil and natural gas services industry knowledge and investment and financial expertise.

**Defendant Kass**

41.     Defendant Michael Kass ("Kass") served as a Company director from 2016 until he resigned on January 29, 2018.

42.     For the fiscal year ended December 31, 2016, Defendant Kass received $82,201 in compensation from the Company, which consisted entirely of fees earned or cash paid.

**Defendant Menkes**

43.     Defendant Alan B. Menkes ("Menkes") has served as a Company director since 2018. He also serves as a member of the Nominating Committee.

44.     For the fiscal year ended December 31, 2018, Defendant Menkes received $168,959 in compensation from the Company. This included $68,959 in fees earned or cash paid and $100,000 in stock awards.

45.     The Company's 2019 Proxy Statement stated the following about Defendant Menkes:

> Mr. Menkes currently serves as the Managing Partner of Empeiria Capital Partners, a private equity firm that he co–founded in 2002. Prior to founding Empeiria, from 1998 through 2002, Mr. Menkes was Co–Director of Private Equity and a member of the Executive Committee of Thomas Weisel Partners, during which period he also served on the boards of directors of a number of companies including Stellent Inc., a public company. Mr. Menkes currently serves as Chairman of the Board of Directors of Tank Partners Holdings LLC, a company controlled by Empeiria, and was previously on the Boards of Integrated Drilling Equipment Holdings, a public company, Stella Environmental Services and Conner Steel Products Holdings. From 2011 to 2012, Mr. Menkes served as the CEO of Empeiria Acquisition Corp., a public special purpose acquisition company until it closed its merger with an operating company in December 2012. From 2009 through 2010, Mr. Menkes served as the managing partner of G2 Investment Group LLC, a diversified asset management firm. Between 2007 and 2008, Mr. Menkes was a Partner of Enterprise Infrastructure Ventures, a real estate investment firm, and the Chief Strategic and Investment Officer of CS Technology, an affiliate of Enterprise Infrastructure Ventures. Mr. Menkes earned a B.A. in Economics with Highest Distinction from the University of Virginia in 1980 and a M.B.A. with Distinction from the Wharton School at the University of Pennsylvania in 1982.

> The Company believes that Mr. Menkes is qualified to serve on the Board based on his significant investment and leadership skills and board experience.

**Defendant Mercer**

46.    Defendant Jacob Mercer ("Mercer") served as a Company director from 2016 through June 19, 2019.[2] He also serves as Chair of the Nominating Committee and as a member of the Compensation Committee.

47.    For the fiscal year ended December 31, 2018, Defendant Mercer received $100,000 in compensation from the Company, which consisted entirely of stock awards.

48.    The Company's Schedule 14A filed with the SEC on April 27, 2018 (the "2018 Proxy Statement") stated the following about Defendant Mercer:

> ***Jacob Mercer,*** age 43, is a Senior Portfolio Manager at Whitebox Advisors LLC ("Whitebox"). Prior to joining Whitebox, Mr. Mercer worked for Xcel Energy as Assistant Treasurer and Managing Director. Before joining Xcel Energy, he was a Senior Credit Analyst and Principal at Piper Jaffray and a Research Analyst at Voyageur Asset Management. Mr. Mercer also served as a logistics officer in the United States Army. Mr. Mercer has served on a number of boards of directors including Par Pacific (NYSE: PARR), Piceance Energy, Platinum Energy Solutions, and Ceres Global Ag (TSX: CRP). Mr. Mercer holds a BA with a double major in economics and business management from St. John's University. He also holds the Chartered Financial Analyst (CFA) designation. We believe that Mr. Mercer is qualified to serve on our Board based on his investment and financial expertise.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

49.    By reason of their positions as officers and/or directors and fiduciaries of SAExploration and because of their ability to control the business and corporate affairs of SAExploration, the Individual Defendants owed SAExploration and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage SAExploration in a fair, just, honest, and equitable manner.

---

[2] According to the Company's 2019 Proxy Statement, Defendant Mercer did not run for reelection as a Company Director at the Company's 2019 Annual Meeting of Stockholders held on June 19, 2019.

The Individual Defendants were and are required to act in furtherance of the best interests of SAExploration and its shareholders so as to benefit all shareholders equally.

50.     Each director and officer of the Company owes to SAExploration and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

51.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of SAExploration, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

52.     To discharge their duties, the officers and directors of SAExploration were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

53.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of SAExploration, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised SAExploration's Board at all relevant times.

54.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, and had a duty to cause the Company to disclose omissions of material fact in its regulatory filings with the SEC including all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

55.     To discharge their duties, the officers and directors of SAExploration were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of SAExploration were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Texas, and the United States, and pursuant to SAExploration's own Code of Business Conduct and Ethics;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how SAExploration conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of SAExploration and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that SAExploration's operations would comply with all applicable laws and SAExploration's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

56.     Each of the Individual Defendants further owed to SAExploration and the shareholders the duty of loyalty requiring that each favor SAExploration's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

57.     At all times relevant hereto, the Individual Defendants were the agents of each other and of SAExploration and were at all times acting within the course and scope of such agency.

58.     Because of their advisory, executive, managerial, and directorial positions with SAExploration, each of the Individual Defendants had access to adverse, non-public information about the Company.

59.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by SAExploration.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

60.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and assisted each other in breaching their respective duties.

61.     The purpose and effect of the conspiracy, common enterprise, and common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, and violations of Section 14(a) of the Exchange Act.

62.     The Individual Defendants accomplished their conspiracy, common enterprise, and common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants

collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of SAExploration, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and common course of conduct complained of herein.

63.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

64.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of SAExploration and was at all times acting within the course and scope of such agency.

## SAEXPLORATION'S CODE OF CONDUCT

65.     The Company's Code of Business Conduct and Ethics (the "Code of Conduct"), states that it: "is a guide to the ethical and legal responsibilities we share and applies to all of SAE and its subsidiaries' directors, officers, employees and third-party representatives such as independent contractors, consultants and agents."

66.     In a section titled, "Ethics," the Code of Conduct provides that the Company's agents and employees must conduct their affairs with "uncompromising honesty and integrity," stating:

> SAE and each of its employees and agents (including independent contractors, consultants and other representatives) wherever they may be located, must conduct their affairs with uncompromising honesty and integrity. Business ethics are no different than personal ethics. The same high standard applies to both. As a

SAE employee or agent you are required to adhere to the highest standard regardless of local custom.

Employees and agents are expected to be honest and ethical in dealing with each other, with clients, vendors and all other third parties. Doing the right thing means doing it right every time.

You must also respect the rights of employees and third parties who come into contact with SAE. Your actions must be free from discrimination, libel, slander and harassment. Each person must be accorded equal opportunity, regardless of age, race, sex, sexual preference, color, religion, national origin, marital status or family obligations, veteran status, or disability.

Misconduct cannot be excused because it was directed or requested by another. In this regard, you are expected to alert management whenever an illegal, dishonest or unethical act is discovered or suspected. You will not be penalized for reporting your discoveries or good faith suspicions.

SAE conducts its affairs consistent with the applicable laws and regulations of the countries where it does business. Business practices, customs and laws differ from country to country. When conflicts arise between SAE's ethical practices, and the practices, customs, and the laws of a country, SAE seeks to resolve them consistent with its ethical beliefs and the prevailing law. If the conflict cannot be resolved consistent with its ethical beliefs, SAE will not proceed with the proposed action giving rise to the conflict. These ethical standards reflect who we are and are the standards by which we choose to be judged.

67.    In a section titled, "Accuracy of Company Records," the Code of Conduct provides that the Company's records and financial disclosures must conform to both legal requirements and the Company's system of internal controls, stating in relevant part:

We are also firmly committed to preventing and detecting any act of fraud. Generally speaking, fraud is intentionally concealing facts in order to deceive or mislead others. SAE requires that all accounting reports, financial statements and other business records documenting transactions and events conform not only to legal requirements and generally accepted accounting principles but also SAE's system of internal controls. All employees have the responsibility to ensure that false or intentionally misleading entries that distort the true nature of transactions are not made in company accounting records. Dishonest and unethical reporting within the company, or to organizations or people outside the company, is strictly prohibited. The following are examples of activities not allowed:

- Not recording or disclosing funds or assets that should be recorded.

- Making false claims on an expense report, time sheet or any other report.
- Giving false quality or safety results.
- Recording false sales or recording sales outside of the time period they actually occurred.
- Understating or overstating known liabilities and assets.
- Delaying the entry of items that should be current expenses.
- Hiding the true nature of any transaction.
- Inaccurately recording transactions or failing to comply with GAAP or applicable laws. Mistakes should never be covered up, but should be immediately fully disclosed and corrected. Be sure that any document you prepare and sign is correct and truthful

68.    The Code of Conduct prohibits insider trading, and states:

It is usually illegal to buy or sell securities using material information not available to the public. Persons who give such undisclosed "inside" information to others may be as liable as persons who trade securities while possessing such information. Securities laws may be violated if you, or any relatives or friends trade in securities of SAE, or any of its clients or vendors, while possessing "inside" information, or to disclose inside information to others who might use such information, directly or indirectly, to trade SAE's securities. You must comply with SAE's Trading of Company Securities Policy and to the extent you are uncertain of any action, the General Counsel can assist you.

69.    The Individual Defendants violated the Code of Conduct by causing the Company to engage in a scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, waste of corporate assets, unjust enrichment, and violations of Section 14(a) of the Exchange Act, and failing to report the same.

## **INDIVIDUAL DEFENDANTS' MISCONDUCT**

### **Background**

70.    SAExploration is a U.S.-based oil and gas exploration company that specializes in acquiring seismic data in logistically complex and challenging environments, which the Company then provides to its customers in the oil and gas industry. In addition to seismic data acquisition, SAExploration provides logistical support, processing, and integrated reservoir

21

geosciences services. The Company was incorporated in Delaware in 2011, is headquartered in Houston, Texas, and conducts its business throughout North America, South America, Asia Pacific, and West Africa.

71. A VIE is a business structure, such as a corporation or corporate subsidiary, in which an investor has a controlling interest but does not have a majority of voting rights. As per FIN 46R, an interpretation of generally accepted accounting principles published by the United States Financial Accounting Standards Board ("FASB"), publicly traded companies must disclose their relationships to VIEs in their Form 10-Ks filed with the SEC, by way of consolidating any VIEs in their financial statements.

72. Throughout the Relevant Period, SAExploration maintained a controlling financial interest in ASV, a data library company based in Wasilla, Alaska. However, the Company erroneously failed to classify ASV as a VIE, and as such did not consolidate ASV in the Company's financial statements.

**False and Misleading Statements**

***2015 10-K***

73. On March 15, 2016, the Company filed with the SEC its 2015 10-K, which was signed by Individual Defendants Hastings, Beatty, Whiteley, and Dalton, as well as non-parties Trisha M. Gerber, Eric S. Rosenfeld, David D. Sgro, and Gregory R. Monahan. The 2015 10-K also contained certifications pursuant to Rule 13a-14(a) and 15d-14(a) under the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Beatty and Whiteley attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

74.     In relevant part, the 2015 10-K stated that "management has concluded that we maintained effective internal control over financial reporting as of December 31, 2015," and that there "were no changes in our internal control over financial reporting that occurred during the fourth quarter of the period covered by this report that have materially affected, or are reasonable likely to materially affect, our internal control over financial reporting."

75.     With respect to VIEs, and the Company's related obligations, the 2015 10-K stated the following:

> We evaluate our joint venture and other entities in which we have a variable interest (a "VIE"), to determine if we have a controlling financial interest and are required to consolidate the entity as a result. The reporting entity with a controlling financial interest in the VIE will have both of the following characteristics: (i) the power to direct the activities of a VIE that most significantly impact the VIE's economic performance and (ii) the obligation to absorb the losses of the VIE that could potentially be significant to the VIE or the right to receive benefit from the VIE that could potentially be significant to the VIE.

***May 16, 2016 Form 10-Q***

76.     On May 16, 2016, the Company filed its quarterly report on a Form 10-Q for the period ended March 31, 2016 (the "May 2016 10-Q"), which was signed by Defendant Whiteley, and which contained SOX certifications signed by Defendants Beatty and Whiteley attesting to the accuracy of the May 2016 10-Q.

77.     In relevant part, the May 2016 10-Q stated: "[t]here were no changes in our internal control over financial reporting that occurred during the first quarter of the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

### August 12, 2016 Form 10-Q

78.     On August 12, 2016, the Company filed its quarterly report on a Form 10-Q for the period ended June 30, 2016 (the "August 2016 10-Q"), which was signed by Defendant Whiteley, and which contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the August 2016 10-Q.

79.     In relevant part, the August 2016 10-Q stated, "[t]here were no changes in our internal control over financial reporting that occurred during the second quarter of the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

### 2016 Proxy Statement

80.     The Company filed its 2016 Schedule 14A with the SEC on September 23, 2016 (the "2016 Proxy Statement"). Defendants Hastings, Whiteley, Beatty, Cooper, Dalton, Kass, and Mercer solicited the 2016 Proxy Statement filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.[3]

81.     The 2016 Proxy Statement stated, regarding the Company's code of conduct, that, "[o]ur Board of Directors has adopted a code of ethics that applies to our directors, officers, and employees and those of any subsidiaries we may have in the future (including our Principle Executive Officer, our Principal Financial Officer, our Principal Accounting Officer, and persons performing similar functions)."

---

[3] Plaintiff's allegations with respect to the misleading statements in the 2016 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these allegations and related claims.

82.     The 2016 Proxy Statement was false and misleading because, despite assertions to the contrary, the Company's code of conduct was not followed, as evidenced by the numerous false and misleading statements alleged herein, the insider trading engaged in by one of the Individual Defendants, and the Individual Defendants' failures to report violations of the code of conduct.

83.     The Individual Defendants also caused the 2016 Proxy Statement to be false and misleading with regard to executive compensation in that it purported to employ "pay-for-performance" elements, including performance cash awards based on " the achievement of financial and operational performance metrics" while failing to disclose that the Company's share price was artificially inflated as a result of false and misleading statements alleged herein.

84.     The 2016 Proxy Statement also failed to disclose, *inter alia*, that: (1) the Company had a controlling financial interest in ASV, which meant that the Company was required to consolidate ASV in its financial statements filed with the SEC; (2) the Company erroneously failed to classify ASV as a VIE, and did not consolidate ASV in its financial statements; (3) the Company had failed to maintain adequate internal controls over its financial reporting; (4) the above facts were likely to result in an SEC investigation of the Company; and (5) consequently, the Company would have to postpone filing its quarterly report with the SEC for the quarter ended June 30, 2019. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

### *November 4, 2016 Form 10-Q*

85.     On November 4, 2016, the Company filed its quarterly report on a Form 10-Q for the period ended September 30, 2016 (the "November 2016 10-Q"), which was signed by

Defendant Whiteley, and which contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the November 2016 10-Q.

86.     In relevant part, the November 2016 10-Q stated, "[t]here were no changes in our internal control over financial reporting that occurred during the third quarter of the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

### *2016 10-K*

87.     On March 15, 2017, the Company filed with the SEC its 2016 10-K, which was signed by Defendants Hastings, Beatty, Whiteley, Cooper, Dalton, Faust, Kass, and Mercer. The 2016 10-K contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

88.     In relevant part, the 2016 10-K stated that "management has concluded that we maintained effective internal control over financial reporting as of December 31, 2016," and that there "were no changes in our internal control over financial reporting that occurred during the fourth quarter of the period covered by this report that have materially affected, or are reasonable likely to materially affect, our internal control over financial reporting."

89.     With respect to VIEs, and the Company's related obligations, the 2016 10-K stated the following:

> We evaluate our joint venture and other entities in which we have a variable interest (a "VIE"), to determine if we have a controlling financial interest and are required to consolidate the entity as a result. The reporting entity with a controlling financial interest in the VIE will have both of the following characteristics: (i) the power to direct the activities of a VIE that most significantly impact the VIE's economic performance and (ii) the obligation to

absorb the losses of the VIE that could potentially be significant to the VIE or the right to receive benefit from the VIE that could potentially be significant to the VIE.

***2017 Proxy Statement***

90.    The Company filed its 2017 Schedule 14A with the SEC on April 28, 2017 (the "2017 Proxy Statement"). Defendants Hastings, Whiteley, Beatty, Cooper, Dalton, Faust, Kass, and Mercer solicited the 2017 Proxy Statement filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.[4]

91.    The 2017 Proxy Statement stated, regarding the Company's code of conduct, that, "[o]ur Board of Directors has adopted a code of ethics that applies to our directors, officers, and employees and those of any subsidiaries we may have in the future (including our Principle Executive Officer, our Principal Financial Officer, our Principal Accounting Officer, and persons performing similar functions."

92.    The 2017 Proxy Statement was false and misleading because, despite assertions to the contrary, the Company's code of conduct was not followed, as evidenced by the numerous false and misleading statements alleged herein, the insider trading engaged in by two of the Individual Defendants, and the Individual Defendants' failures to report violations of the code of conduct.

93.    The Individual Defendants also caused the 2017 Proxy Statement to be false and misleading with regard to executive compensation in that it purported to employ "pay-for-performance" elements, including performance cash awards based on " the achievement of

---

[4] Plaintiff's allegations with respect to the misleading statements in the 2017 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these allegations and related claims.

financial and operational performance metrics" while failing to disclose that the Company's share price was artificially inflated as a result of false and misleading statements alleged herein.

94.     The 2017 Proxy Statement also failed to disclose, *inter alia*, that: (1) the Company had a controlling financial interest in ASV, which meant that the Company was required to consolidate ASV in its financial statements filed with the SEC; (2) the Company erroneously failed to classify ASV as a VIE, and did not consolidate ASV in its financial statements; (3) the Company had failed to maintain adequate internal controls over its financial reporting; (4) the above facts were likely to result in an SEC investigation of the Company; and (5) consequently, the Company would have to postpone filing its quarterly report with the SEC for the quarter ended June 30, 2019. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

### *May 5, 2017 Form 10-Q*

95.     On May 5, 2017, the Company filed its quarterly report on a Form 10-Q for the period ended March 31, 2017 (the "May 2017 10-Q"), which was signed by Defendant Whiteley, and which contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the May 2017 10-Q.

96.     In relevant part, the May 2017 10-Q stated, "[t]here were no changes in our internal control over financial reporting that occurred during the first quarter of the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

### *August 21, 2017 Form 10-Q*

97.     On August 21, 2017, the Company filed its quarterly report on a Form 10-Q for the period ended June 30, 2017 (the "August 2017 10-Q"), which was signed by Defendant

Whiteley, and which contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the August 2017 10-Q.

98.     In relevant part, the August 2017 10-Q stated, "[t]here were no changes in our internal control over financial reporting that occurred during the second quarter of the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

### November 8, 2017 Form 10-Q

99.     On November 8, 2017, the Company filed its quarterly report on a Form 10-Q for the period ended September 30, 2017 (the "November 2017 10-Q"), which was signed by Defendant Whiteley, and which contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the November 2017 10-Q.

100.    In relevant part, the November 2017 10-Q stated, "[t]here were no changes in our internal control over financial reporting that occurred during the third quarter of the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

### 2017 10-K

101.    On March 16, 2018, the Company filed with the SEC its 2017 10-K, which was signed by Defendants Hastings, Beatty, Whiteley, Cooper, Dalton, Faust, Menkes, and Mercer. The 2017 10-K contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

102.     In relevant part, the 2017 10-K stated that "management has concluded that we maintained effective internal control over financial reporting as of December 31, 2017," and that there "were no changes in our internal control over financial reporting that occurred during the fourth quarter of the period covered by this report that have materially affected, or are reasonable likely to materially affect, our internal control over financial reporting."

103.     With respect to VIEs, and the Company's related obligations, the 2017 10-K stated the following:

> We evaluate our joint venture and other entities in which we have a variable interest (a "VIE"), to determine if we have a controlling financial interest and are required to consolidate the entity as a result. The reporting entity with a controlling financial interest in the VIE will have both of the following characteristics: (i) the power to direct the activities of a VIE that most significantly impact the VIE's economic performance and (ii) the obligation to absorb the losses of the VIE that could potentially be significant to the VIE or the right to receive benefit from the VIE that could potentially be significant to the VIE.

### *2018 Proxy Statement*

104.     The Company filed its 2018 Schedule 14A with the SEC on April 27, 2018 (the "2018 Proxy Statement"). Defendants Hastings, Whiteley, Beatty, Cooper, Dalton, Faust, Menkes, and Mercer solicited the 2018 Proxy Statement filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.[5]

105.     The 2018 Proxy Statement stated, regarding the Company's code of ethics, that, "[o]ur Board of Directors has adopted a code of ethics that applies to our directors, officers, and employees and those of any subsidiaries we may have in the future (including our Principle

---

[5] Plaintiff's allegations with respect to the misleading statements in the 2018 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these allegations and related claims.

Executive Officer, our Principal Financial Officer, our Principal Accounting Officer, and persons performing similar functions."

106. The 2018 Proxy Statement was false and misleading because, despite assertions to the contrary, the Company's code of conduct was not followed, as evidenced by the numerous false and misleading statements alleged herein, the insider trading engaged in by two of the Individual Defendants, and the Individual Defendants' failures to report violations of the code of conduct.

107. The Individual Defendants also caused the 2018 Proxy Statement to be false and misleading with regard to executive compensation in that it purported to employ "pay-for-performance" elements, including cash awards based on "individual performance and other information deemed relevant and timely" while failing to disclose that the Company's share price was artificially inflated as a result of false and misleading statements alleged herein.

108. The 2018 Proxy Statement also failed to disclose, *inter alia*, that: (1) the Company had a controlling financial interest in ASV, which meant that the Company was required to consolidate ASV in its financial statements filed with the SEC; (2) the Company erroneously failed to classify ASV as a VIE, and did not consolidate ASV in its financial statements; (3) the Company had failed to maintain adequate internal controls over its financial reporting; (4) the above facts were likely to result in an SEC investigation of the Company; and (5) consequently, the Company would have to postpone filing its quarterly report with the SEC for the quarter ended June 30, 2019. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

### *May 15, 2018 Form 10-Q*

109.    On May 15, 2018, the Company filed its quarterly report on a Form 10-Q for the period ended March 31, 2018 (the "May 2018 10-Q"), which was signed by Defendant Whiteley, and which contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the May 2018 10-Q.

110.    In relevant part, the May 2018 10-Q stated, "[t]here were no changes in our internal control over financial reporting that occurred during the first quarter of 2018 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

### *August 9, 2018 Form 10-Q*

111.    On August 9, 2018, the Company filed its quarterly report on a Form 10-Q for the period ended June 30, 2018 (the "August 2018 10-Q"), which was signed by Defendant Whiteley, and which contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the August 2018 10-Q.

112.    In relevant part, the August 2018 10-Q stated, "[t]here have not been any changes in our internal control over financial reporting during the three months ended June 30, 2018 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

### *November 13, 2018 Form 10-Q*

113.    On November 13, 2018, the Company filed its quarterly report on a Form 10-Q for the period ended September 30, 2018 (the "November 2018 10-Q"), which was signed by Defendant Whiteley, and which contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the November 2018 10-Q.

114.    In relevant part, the November 2018 10-Q stated: "[t]here have not been any changes in our internal control over financial reporting during the three months ended September 30, 2018 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

### 2018 10-K

115.    On March 25, 2019, the Company filed with the SEC its 2018 10-K, which was signed by Defendants Hastings, Beatty, Whiteley, Cooper, Dalton, Faust, Menkes, and Mercer. The 2018 10-K contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

116.    In relevant part, the 2018 10-K stated that "management has concluded that we maintained effective internal control over financial reporting as of December 31, 2018," and that there "were no changes in our internal control over financial reporting that occurred during the fourth quarter of the period covered by this report that have materially affected, or are reasonable likely to materially affect, our internal control over financial reporting."

117.    With respect to VIEs, and the Company's related obligations, the 2018 10-K stated the following:

> We evaluate our joint venture and other entities in which we have a variable interest (a "VIE"), to determine if we have a controlling financial interest and are required to consolidate the entity as a result. The reporting entity with a controlling financial interest in the VIE will have both of the following characteristics: (i) the power to direct the activities of a VIE that most significantly impact the VIE's economic performance and (ii) the obligation to absorb the losses of the VIE that could potentially be significant to the VIE or the right to receive benefit from the VIE that could potentially be significant to the VIE.

### *2019 Proxy Statement*

118.    The Company filed the 2019 Proxy Statement with the SEC on April 30, 2019. Defendants Hastings, Whiteley, Beatty, Cooper, Dalton, Faust, Menkes, and Mercer solicited the 2019 Proxy Statement filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.[6]

119.    The 2019 Proxy Statement stated, regarding the Company's code of conduct, that, "[t]he Company has adopted a Code of Business Conduct and Ethics (the "Code") for its directors, officers and other employees."

120.    The 2019 Proxy Statement was false and misleading because, despite assertions to the contrary, the Company's code of conduct was not followed, as evidenced by the numerous false and misleading statements alleged herein, the insider trading engaged in by three of the Individual Defendants, and the Individual Defendants' failures to report violations of the code of conduct.

121.    The Individual Defendants also caused the 2019 Proxy Statement to be false and misleading with regard to executive compensation in that it purported to employ "pay-for-performance" elements, including performance cash awards based on " the achievement of specified performance goals" by the company's executive officers, while failing to disclose that the Company's share price was artificially inflated as a result of false and misleading statements alleged herein.

---

[6] Plaintiff's allegations with respect to the misleading statements in the 2019 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these allegations and related claims.

122.    The 2019 Proxy Statement also failed to disclose, *inter alia*, that: (1) the Company had a controlling financial interest in ASV, which meant that the Company was required to consolidate ASV in its financial statements filed with the SEC; (2) the Company erroneously failed to classify ASV as a VIE, and did not consolidate ASV in its financial statements; (3) the Company had failed to maintain adequate internal controls over its financial reporting; (4) the above facts were likely to result in an SEC investigation of the Company; and (5) consequently, the Company would have to postpone filing its quarterly report with the SEC for the quarter ended June 30, 2019. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

### May 14, 2019 Form 10-Q

123.    On May 14, 2019, the Company filed its quarterly report on a Form 10-Q for the period ended March 31, 2019 (the "May 2019 10-Q"), which was signed by Defendant Whiteley, and which contained SOX certifications signed by Defendants Hastings and Whiteley attesting to the accuracy of the May 2019 10-Q.

124.    In relevant part, the May 2019 10-Q stated: "[t]here have not been any changes in our internal control over financial reporting during the three months ended March 31, 2019 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

125.    The statements referenced in ¶¶73–79, 85–89, 95–103, 109–117, and 123–124 were materially false and/or misleading because they failed to disclose, *inter alia*, that: (1) the Company had a controlling financial interest in ASV, which meant that the Company was required to consolidate ASV in its financial statements filed with the SEC; (2) the Company erroneously failed to classify ASV as a VIE, and did not consolidate ASV in its financial

statements; (3) the Company had failed to maintain adequate internal controls over its financial reporting; (4) the above facts were likely to result in an SEC investigation of the Company; and (5) consequently, the Company would have to postpone filing its quarterly report with the SEC for the quarter ended June 30, 2019. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

126.    On August 15, 2019, the Company issued a press release (the "August 2019 Press Release") stating that the SEC was investigating the Company over certain accounting issues that arose between 2015 and 2016. The August 2019 Press Release also stated that as a result of the investigation, the Company would need to restate its financial statements filed with the SEC between 2015 and 2018, and that the Company would need to delay filing its quarterly report for the quarter ended June 30, 2019. Lastly, the August 2019 Press Release announced that Defendant Whiteley had been terminated from his positions with the Company, and that Defendant Hastings had resigned as Chairman of the Board and had been placed on administrative leave.

127.    In relevant part, the August 2019 Press Release stated:

HOUSTON, Aug. 15, 2019 /PRNewswire/ -- SAExploration Holdings, Inc. (NASDAQ: SAEX, OTCQB: SXPLW) ("SAE" or the "Company") announced today that the Securities and Exchange Commission (the "SEC") is conducting an investigation of the Company relating to certain accounting matters that arose in 2015-2016.  The Company has been cooperating, and will continue to cooperate, in good faith with the SEC and has retained legal counsel and an accounting advisor to assist the Company with respect to this matter. The Company's Board of Directors has established a Special Committee of independent directors to oversee the Company's own internal investigation and response to the SEC.

The Company will restate its previously issued financial statements for the fiscal years ended December 31, 2015 - 2018 and for the quarters starting ended June 30, 2015 - March 31, 2019 (collectively, the "Non-Reliance Periods") and, as a result, will delay filing its 10-Q for the quarter ended June 30, 2019. As a result,

the financial statements for the Non-Reliance Period should no longer be relied upon. The Board's decision to restate these financial statements arose from the Company's re-evaluation of its relationship with Alaska Seismic Ventures, LLC ("ASV").  The Company has determined that ASV was a variable interest entity and that the Company had a controlling financial interest in ASV that required it to consolidate ASV during the Non-Reliance Periods in accordance with accounting principles generally accepted in the United States. As a result of the above, the Company has determined that a material weakness exists in the Company's internal control over financial reporting and that disclosure controls and procedures were ineffective during the Non-Reliance Periods. Accordingly, the Company will amend any disclosures pertaining to its evaluation of such controls and procedures as appropriate in connection with the restated filings. ASV is a data library company and the Company performed seismic services for ASV in 2015 and 2016. The need for restatement does not arise from SAE's current operating activities. The Company's Audit Committee has discussed the foregoing matters with Pannell Kerr Forster of Texas, P.C., the Company's independent registered public accounting firm, who supports the Company's determination. In connection with the restatement, the Company is in discussions with holders of a majority of its outstanding debt, as to whether or not there are defaults under the debt agreements, with the goal of agreeing to a path forward in a way that is constructive for the Company, its shareholders and employees, and the debt holders.

Michael Faust has been named Chairman of the Board, replacing Jeff Hastings, who has been placed on administrative leave and resigned as Chairman of the Board. The Company expects to name a new Chief Executive Officer in the near future. Kevin Hubbard, C.P.A. and Partner at Ham, Langston & Brezina, has been named Interim Chief Financial Officer, replacing Brent Whiteley, who has been terminated.

"We have taken swift action on each of these matters and will continue to do so until they are resolved," said Michael Faust, Chairman of the Board. "This does not impact our day-to-day operations which have been delivering outstanding results for our customers and investors. We remain committed to our customers, whose missions we make our own, and we are grateful to the devoted men and women of SAExploration and the contributions they make every day to our customers and our company. We have a strong pipeline of committed projects, an excellent team to deliver those projects, and are poised for continued success."

128.   Upon the release of this news, SAExploration's share price plunged $1.13 per share, a drop of more than 34% from its closing price of $3.25 on August 15, 2019, to close at $2.14 on August 16, 2019.

## DAMAGES TO SAEXPLORATION

129.    As a direct and proximate result of the Individual Defendants' conduct, SAExploration will lose and expend, many millions of dollars.

130.    Such expenditures include, but are not limited to, legal fees associated with the Securities Class Action filed against the Company, its COO, its former CEO, and its former CFO, and amounts paid to outside lawyers, accountants, and investigators in connection thereto and in connection with any necessary restatements.

131.    Additionally, these expenditures include, but are not limited to, the excessive compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company, including bonuses tied to the Company's attainment of certain objectives, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

132.    As a direct and proximate result of the Individual Defendants' conduct, SAExploration has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

133.    Plaintiff brings this action derivatively and for the benefit of SAExploration to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of SAExploration, waste of corporate assets, unjust enrichment, and violation of Sections 14(a) of the Exchange Act, as well as the aiding and abetting thereof.

134.    SAExploration is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

135.    Plaintiff is, and has continuously been at all relevant times, a shareholder of SAExploration. Plaintiff will adequately and fairly represent the interests of SAExploration in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

136.    Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

137.    A pre-suit demand on the Board of SAExploration is futile and, therefore, excused. At the time of the filing of this action, the Board consists of the following five individuals: Defendants Beatty, Cooper, Dalton, Faust, and Menkes (the "Directors"). Plaintiff needs only to allege demand futility as to three of the five Directors who were on the Board at the time this action was commenced.

138.    Demand is excused as to all of the Directors because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to cause the Company to engage in the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, while two of them engaged in insider sales based on material non-public information, netting proceeds of over $307,479, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

139.    In complete abdication of their fiduciary duties, the Directors either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. That fraudulent scheme was, *inter alia*, intended to make the Company appear more profitable and attractive to investors. As a result of the foregoing, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

140.    Additional reasons that demand on Defendant Beatty is futile follow. Defendant Beatty founded SAExploration in 2006, and has served as the Company's President and CEO from 2011 to 2016, as a member of the Board since 2011, and as COO since 2016. Thus, Defendant Beatty is a non-independent director. The Company provides Defendant Beatty with his principal occupation, and he receives handsome compensation, including $4,624,971 during the fiscal year ended December 31, 2018. As a Company officer and as a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Beatty signed, and thus personally made the false and misleading statements in, the May 2016 10-Q, and the 2015 through 2018 10-Ks. His insider sales before the fraud was exposed, which yielded at least $303,400 in proceeds, demonstrate his motive in facilitating and participating in the fraud. Moreover, Defendant Beatty is a defendant in the Securities Class Action. Furthermore, he could not impartially consider a demand to take action against himself for causing the Company to award him excessive and unjust compensation. For these reasons, too, Defendant Beatty breached his fiduciary duties,

faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

141.    Additional reasons that demand on Defendant Cooper is futile follow. Defendant Cooper has served as a Company director since 2016. Defendant Cooper also serves as the Chair of the Audit Committee, and as a member of the Compensation Committee. As a Company officer and as a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Cooper signed, and thus personally made the false and misleading statements in the 2016 10-K, the 2017 10-K, and the 2018 10-K. For these reasons, too, Defendant Cooper breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

142.    Additional reasons that demand on Defendant Dalton is futile follow. Defendant Dalton has served as a Company director since 2013. Defendant Dalton also serves as the Chair of the Compensation Committee, and as a member of the Nominating Committee and the Audit Committee. As a Company officer and as a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Dalton signed, and thus personally made the false and misleading statements in the 2015 10-K, the 2016 10-K, the 2017 10-K, and the 2018 10-K. His insider sale before the fraud was exposed, which yielded at least $4,079 in proceeds, demonstrate his motive in facilitating

and participating in the fraud. For these reasons, too, Defendant Dalton breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

143.    Additional reasons that demand on Defendant Faust is futile follow. Defendant Faust has served as a Company director since 2017, as Chairman of the Board since August 15, 2019, and as interim President since August 19, 2019. Defendant Faust also serves as a member of the Audit Committee. Defendant Faust receives handsome compensation from the Company, which includes $191,000 in compensation for the fiscal year ended December 31, 2018, and a $1 million signing bonus that will be given in connection with his appointment as interim President. As a Company officer and as a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Faust signed, and thus personally made the false and misleading statements in the 2016 10-K, the 2017 10-K. Furthermore, he could not impartially consider a demand to take action against himself for causing the Company to award him excessive and unjust compensation. For these reasons, too, Defendant Faust breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

144.    Additional reasons that demand on Defendant Menkes is futile follow. Defendant Menkes has served as a Company director since 2018. Defendant Menkes also serves as a member of the Nominating Committee. As a Company officer and as a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such

controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Menkes signed, and thus personally made the false and misleading statements in the 2018 10-K. For these reasons, too, Defendant Menkes breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

145.     Additional reasons that demand on the Board is futile follow.

146.     As described above, two of the Directors directly engaged in insider trading, in violation of federal law. Directors Beatty and Dalton collectively received proceeds of over $307,479 as a result of insider transactions executed during the period when the Company's stock price was artificially inflated due to the false and misleading statements alleged herein. Therefore, demand in this case is futile as to them, and thus excused.

147.     Directors Cooper, Dalton, and Faust were members of SAExploration's Audit Committee during the Relevant Period. These Directors were expressly responsible for oversight of the integrity of SAExploration's financial statements, the adequacy of SAExploration's internal controls over financial reporting, and discussion with Company management concerning significant financial reporting issues and judgments made in connection with the Company's financial statements. These Directors' participation in making or causing SAExploration to make the materially false and misleading statements alleged herein represents either intentional wrongdoing or reckless disregard for their duties as members of the Audit Committee. Thus, Directors Cooper, Dalton, and Faust face a substantial likelihood of liability and demand is futile as to them.

148.     In violation of the Code of Conduct, the Directors conducted little, if any, oversight of the Company's internal controls over public reporting and of the Company's

engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public, and facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, and violations of the Exchange Act. In violation of the Code of Conduct, the Directors failed to comply with the law. Thus, the Directors face a substantial likelihood of liability and demand is futile as to them.

149.     SAExploration has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for SAExploration any part of the damages SAExploration suffered and will continue to suffer thereby. Thus, any demand upon the Directors would be futile.

150.     The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

151.     The acts complained of herein constitute violations of fiduciary duties owed by SAExploration officers and directors, and these acts are incapable of ratification.

152.     The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds,

i.e., monies belonging to the stockholders of SAExploration. If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Directors were to sue themselves or certain of the officers of SAExploration, there would be no directors' and officers' insurance protection. Accordingly, the Directors cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Directors is futile and, therefore, excused.

153.     If there is no directors' and officers' liability insurance, then the Directors will not cause SAExploration to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

154.     Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, at least three of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## **FIRST CLAIM**

### **Against Individual Defendants for Violations of Section 14(a) of the Exchange Act**

155.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

156.     The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claims alleged herein do not allege and do not

sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

157.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

158.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

159.    Under the direction and watch of the Directors serving on the Board during the issuance of the 2016, 2017, 2018, and 2019 Proxy Statements (the "Proxy Statements") the Proxy Statements failed to disclose, *inter alia*, that: (1) the Company erroneously failed to classify ASV as a VIE; (2) the Company had a controlling financial interest in ASV, which meant that the Company was required to consolidate ASV in its financial statements; (3) the Company had failed to maintain adequate internal controls over its financial reporting; (4) the above facts were likely to result in an SEC investigation of the Company; and (5) consequently, the Company would be forced to delay filing its quarterly report with the SEC for the quarter

ended June 30, 2019. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

160.    The Individual Defendants also caused the Proxy Statements to be false and misleading with regard to executive compensation in that they purported to employ "pay-for-performance" elements, such as equity awards designed to "promote [the Company's] long-term success and shareholder value" while failing to disclose that the Company's share price was artificially inflated as a result of false and misleading statements alleged herein, and therefore any compensation based on the Company's financial performance was artificially inflated.

161.    The Proxy Statements also made references to the Code of Conduct. The Code of Conduct required the Company and the Individual Defendants to abide by relevant laws and regulations, make accurate and non-misleading public disclosures, and not engage in insider trading. By engaging issuing false and misleading statements to the investing public and insider trading, the Individual Defendants violated the Company's code of conduct. The Proxy Statements failed to disclose these violations and also failed to disclose that the code of conduct's terms were being violated.

162.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the Proxy Statements, including, but not limited to, election of directors, ratification of an independent auditor, and advisory approval of executive compensation.

163.    The false and misleading elements of the Proxy Statements led to the re-election of Defendants Hastings, Beatty, Cooper, Dalton, Faust, Menkes, and Mercer, which allowed them to continue breaching their fiduciary duties to SAExploration.

164.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the Proxy Statements.

165.    Plaintiff on behalf of SAExploration has no adequate remedy at law.

## SECOND CLAIM

### Against Individual Defendants for Breach of Fiduciary Duties

166.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

167.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of SAExploration's business and affairs.

168.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

169.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of SAExploration.

170.    In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

171.    In yet further breach of their fiduciary duties owed to SAExploration, the Individual Defendants willfully or recklessly made and/or caused the Company to make false

and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that: (1) the Company had a controlling financial interest in ASV, which meant that the Company was required to consolidate ASV in its financial statements filed with the SEC; (2) the Company erroneously failed to classify ASV as a VIE, and did not consolidate ASV in its financial statements; (3) the Company had failed to maintain adequate internal controls over its financial reporting; (4) the above facts were likely to result in an SEC investigation of the Company; and (5) consequently, the Company would have to postpone filing its quarterly report with the SEC for the quarter ended June 30, 2019. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

172.    The Individual Defendants failed to correct and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

173.    In breach of their fiduciary duties, three of the Individual Defendants engaged in lucrative insider sales while the price of the Company's common stock was artificially inflated due to the false and misleading statements of material fact discussed herein.

174.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were

committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities and disguising insider sales.

175.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities and engaging in insider sales. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

176.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

177.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, SAExploration has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

178.    Plaintiff on behalf of SAExploration has no adequate remedy at law.

## **THIRD CLAIM**

### **Against Individual Defendants for Unjust Enrichment**

179.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

180.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, SAExploration.

181.    The Individual Defendants either benefitted financially from the improper conduct and their making lucrative insider sales or received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from SAExploration that was tied to the performance or artificially inflated valuation of SAExploration, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

182.    The Individual Defendants were also unjustly enriched by causing themselves to receive excessive compensation from the Company given their misconduct and also relative to compensation provided at comparable companies irrespective of their misconduct.

183.    Plaintiff, as a shareholder and a representative of SAExploration, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

184.    Plaintiff on behalf of SAExploration has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants for Waste of Corporate Assets

185.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

186.    As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

187.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

188.    Plaintiff on behalf of SAExploration has no adequate remedy at law.

## PRAYER FOR RELIEF

189.    FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)     Declaring that Plaintiff may maintain this action on behalf of SAExploration, and that Plaintiff is an adequate representative of the Company;

(b)     Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to SAExploration;

(c)     Determining and awarding to SAExploration the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)     Directing SAExploration and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to

comply with applicable laws and to protect SAExploration and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

> 1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

> 2. a provision to permit the shareholders of SAExploration to nominate at least three candidates for election to the Board; and

> 3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)    Awarding SAExploration restitution from the Individual Defendants, and each of them;

(f)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)    Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: September 6, 2019

Of Counsel:

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
240 Townsend Square
Oyster Bay, NY 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

Respectfully submitted,

**FARNAN LLP**

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

*Attorneys for Plaintiff*